## AFFIDAVIT

I, Shawn Cayer, Task Officer, Drug Enforcement Administration ("DEA"), being sworn, depose and state as follows:

### INTRODUCTION

1.      I am an "investigative or law enforcement officer of the United States" within the meaning of Section 2510(7) of Title 18, United States Code, that is, an officer of the United States who is empowered by law to conduct investigations of, and to make arrests for, offenses enumerated in Section 2516, Title 18, United States Code.

2.      For the past eighteen years, I have been employed as a trooper with the Massachusetts State Police ("MSP"). Since 2012, I have been assigned to a DEA group that targets high-level drug trafficking organizations in the Boston area.

3.      Through my work with DEA and MSP, I am familiar with the manner and means commonly employed by drug traffickers, including those employed to avoid detection by law enforcement. I am also familiar with the terminology and slang commonly employed by drug traffickers. In my training and experience, I have observed and examined fentanyl, heroin, cocaine, cocaine base ("crack"), marijuana, methamphetamine, oxycodone, and other controlled substances. I am aware of the prices commonly charged on the street for these substances, the method of packaging, and the jargon used in their trade. During my law enforcement career, I have received specialized training regarding the activities of narcotics traffickers, including the methods used to package, store, and distribute narcotics, and the methods used by narcotics traffickers to conceal and launder the proceeds of their narcotics trafficking activities.

4.      I have participated in various aspects of drug-related investigations. I have participated in controlled purchases of controlled substances utilizing confidential sources and

undercover law enforcement agents and officers. I have prepared affidavits in support of applications for criminal complaints, search warrants, tracking warrants, and/or arrest warrants. I have also conducted and coordinated electronic and physical surveillance of individuals involved in the illegal distribution of controlled substances.

5. I submit this affidavit in support of an application for a criminal complaint charging Carlos Acosta ESTRELLA and his mother, Ana Guadalupe Acosta GRAJEDA (collectively, the "defendants") with possession with intent to distribute 500 grams or more of cocaine, in violation of Title 21, United States Code, Section 841(a)(1). This affidavit does not set forth all the facts developed during the course of this investigation. Rather, it sets forth only those facts that are necessary to establish probable cause to believe that the defendants have committed the violation set forth in the accompanying criminal complaint.

6. Within the past week, DEA Boston received information from agents assigned to the DEA's Houston office. DEA Houston received information from a confidential source that it had been contacted by a Mexican drug supplier who had four kilograms of cocaine in Boston to sell for $29,500 per kilogram. The Mexican supplier provided the confidential source a telephone number for the Boston cocaine source. On September 11, 2019, at approximately 11:00 a.m., agents directed a cooperating witness ("CW-1") to place a consensually-recorded telephone call to the telephone number provided by the Mexican drug supplier to DEA Houston's source.[1] During

---

[1] CW-1 has a criminal record that includes a conviction for a drug trafficking offense. CW-1 initially began cooperating with law enforcement in the hopes that CW-1's assistance would result in a reduced sentence. CW-1 received a reduced sentence for its cooperation. Thereafter, for the past few years, CW-1 has continued to make controlled purchases of evidence under the direction of agents. These purchases have led to the seizure of controlled substances, including cocaine, on numerous occasions, and have served as the basis for search warrants which have led to the seizure of controlled substances. For these reasons, I believe CW-1 to be reliable.

the recorded call, CW-1 spoke to a man who I believe was ESTRELLA. CW-1 ordered the four kilograms of cocaine. ESTRELLA told CW-1 he would need a little time but directed CW-1 to meet him at the D'Parma Restaurant at 182 Sumner Street in East Boston.

7.  Using a standard set of procedures, agents searched CW-1 and CW-1's vehicle for money or contraband with negative results. Agents provided CW-1 with an audio / video recording device and with a transmitter so that agents could listen to CW-1's conversations in real time. Agents provided CW-1 with $118,000 in sham DEA currency that was wrapped in green cellophane wrapping. Agents surveilled CW-1 to the area of the meeting location and set up surveillance in the vicinity.

8.  Based on the call with ESTRELLA, CW-1 believed that the drug delivery would take place inside the D'Parma Restaurant. While CW-1 was inside the restaurant, agents observed a man and a woman (later determined to be the defendants) standing on the sidewalk near the restaurant. GRAJEDA was carrying a blue backpack. After waiting for some time, CW-1 walked out of the restaurant and met the defendants on the street. CW-1 and the defendants walked over to CW-1's vehicle, parked nearby, and entered CW-1's car.

9.  During the ensuing audio and video recorded meeting, ESTRELLA told CW-1 that he only had two kilograms of cocaine to sell. CW-1 complained to ESTRELLA that this was not the deal CW-1 had agreed to but ESTRELLA maintained that he only had the two kilograms of cocaine to sell. Thereafter, CW-1 agreed to purchase the two kilograms. GRAJEDA reached into the blue backpack, pulled out two kilograms of cocaine, and handed the kilograms to CW-1. CW-1 handed the defendants approximately $60,000 of sham DEA money. The defendants then left CW-1's vehicle. After the deal, CW-1 left the area and contacted agents by phone. CW-1 advised

that CW-1 had two kilograms of cocaine. A subsequent field test on the two kilograms was positive for the presence of cocaine.

10. Agents began to move in to arrest the defendants. The defendants entered 192 Sumner Street, a building with commercial stores – agents observed a real estate agency and two restaurants – on the first floor and apartments on the upper floors. During this investigation, agents received assistance from several members of the Boston Police Department drug control unit for East Boston. One of the officers opened the front common door to 192 Sumner Street and saw ESTRELLA on the stairs above him. The officer said words to the effect of, "Hold up a second, I want to talk to you." ESTRELLA bolted up the stairs to a landing on the second floor. ESTRELLA opened the door to Apartment 2, closed it behind him, and locked it. Agents breached the door to pursue ESTRELLA.

11. While agents were attempting to breach the front door, I proceeded to the back of the building. Once there, I observed ESTRELLA come out a back door to Apartment 2, which led to a fire escape. ESTRELLA looked at me and retreated inside Apartment 2. I proceeded to run up the fire escape and entered Apartment 2 through the back door. Once inside, I noted that agents were placing ESTRELLA in handcuffs. I also observed GRAJEDA inside the apartment and observed the sham DEA money on a table in the living room. Agents called the telephone number that had been provided by the Mexican supplier to the DEA Houston source and a cellular telephone on ESTRELLA's person rang. The defendants were placed under arrest.

12. Agents executed a federal search warrant at 192 Sumner Street, Apartment 2, in East Boston. Pursuant to the warrant, agents seized one kilogram of suspected heroin, one kilogram of a grey substance believed to be fentanyl or carfentanil, the sham DEA currency provided to the defendants by CW-1 during the controlled purchase of the two kilograms of cocaine, numerous

cellular telephones, a high-powered tactical shotgun with a laser sight, see Exhibit 1 (photograph of shotgun), and a box of ammunition for the shotgun.

13. Based on the information set forth above, I submit that there is probable cause to believe that Carlos Acosta ESTRELLA and Ana Guadalupe Acosta GRAJEDA possessed 500 grams or more of cocaine with the intent to distribute it, in violation of Title 21, United States Code, Section 841(a)(1).

I, Shawn Cayer, having signed this Affidavit under oath as to all assertions and allegations contained herein, state that its contents are true and correct to the best of my knowledge, information, and belief.

_____
Shawn Cayer
Task Force Officer
Drug Enforcement Administration

Sworn to and subscribed before me this 12th day of September 2019.

_____
The Honorable Jennifer C. Boal
United States Magistrate Judge